# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings<br>Under Chapter 13 |
| Lisa Ann Early | Case No. 14-30785 |
| Debtor. | |

## OPINION

This matter comes before the Court on the Chapter 13 Trustee's objection to confirmation of debtor Lisa Ann Early's plan. The Trustee's objection is based on 11 U.S.C. § 1325(b).[1] The Trustee objects that the debtor is not paying all of her projected disposable income to unsecured creditors under the proposed plan. For the reasons stated below, the Trustee's objection is sustained.

## Facts

The relevant facts of the case are not in dispute. The debtor filed for relief under Chapter 13 of the United States Bankruptcy Code. The debtor's income exceeds the median family income of a household of the same size in the State of Illinois. Along with the required bankruptcy schedules, the debtor included with her petition for relief a completed *Chapter 13 Statement of Current Monthly*

---

[1] All statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* References to the Bankruptcy Code prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, are cited in this opinion as 11 U.S.C. § (section number) (2004).

*Income and Calculation of Commitment Period and Disposable Income* (Form B22C, or B22C).

The debtor's actual expenses[2] exceed her allowed deductions pursuant to §§ 1325(b)(3) and 707(b)(2)(A) and (B). Her Schedules I and J list a monthly net

---

[2] Line 22 of Schedule J indicates that the debtor's monthly expenses amount to $3,324.76. In addition, line 5 of Schedule I specifies total payroll deductions of $1,646.70. Therefore, the debtor's actual monthly expenses equal $4,971. The debtor only qualifies for a total adjustment to her disposable income of $4,439.46. The Trustee provided a comparative breakdown in his brief of the debtor's expenses similar to the following chart:

| Type of Expense | Form B22C | Schedule J | Difference Which is Higher? (**Bold** = B22C) (*Italics* = Sch. J) |
|---|---|---|---|
| Rent/Mortgage Inclusive of taxes and ins. | $832 (Standard Expense) Ln 25B plus Ln 47a | $759.97 | **$72.03** |
| Utilities and Home Maintenance | $442 (Standard Expense) Ln 25A | $100 Home Maint. $125 Electric/Heat $53 Water/Sewer/Trash $216.95 Cell/Internet/Cable Total: $494.95 | *$52.95* |
| Food, Housekeeping, Apparel, Laundry, Personal Care and Miscellaneous | $583 (Standard Expense) Ln 24A | $658 Food/Housekeeping $130 Clothing/Laundry $150 Personal Care $100 Miscellaneous $100 Entertainment Total: $1,138 | *$555.00* |
| Out of Pocket Medical/Dental | $60 (Standard Expense) Ln 24B | $45.00 | **$15.00** |
| Transportation, Vehicle Maintenance and Insurance | $212 (Standard Expense) Ln 27A | $343.66 Transportation $112.76 Insurance Total: $456.42 | *$244.42* |
| Transportation Ownership/Lease Expense | $517 (Standard Expense) Ln 28 plus Ln 47b | $330.42 | **$186.58** |
| Deductions from Employer (Net Income) | $1,469.72 Taxes, Ln 30 $33.19 Health Ins., Ln 39a $242.04 Retirement, Ln 55 Total: $1,744.95 | $1,368.29 Taxes, Sch. I $33.19 Health Ins., Sch. I $245.22 Retirement, Sch. I Total: $1,646.70 | **$98.25** |
| Trustee Fee | $48.60 Ln 50 | $0.00 (Not Applicable) | **$48.60** |

2

income of $158.22; however, her monthly disposable income, as indicated on line 59 of Form B22C, is $815.53. The debtor proposes to make monthly payments of $158 to unsecured creditors during the length of her 60-month plan.

The Trustee objects to the debtor's proposed monthly payments, arguing that by proposing to pay less than her disposable income into the plan for the benefit of her unsecured creditors the debtor's plan is in violation of § 1325(b). He contends that the debtor is required to propose monthly payments of $815.53, amounting to a total pool for unsecured creditors of $48,931.80. In response, the debtor argues that, under the United States Supreme Court's decision in *Hamilton v. Lanning*, 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010), debtors may deviate from Form B22C in calculating projected disposable income if their actual expenses are greater than their allowed expenses.

**Issue**

The question this case presents is whether, when determining projected disposable income, courts may confirm an above-median debtor's plan that deviates from Form B22C simply because the debtor's actual expenses exceed her allowed deductions.

**Discussion**

**A. Legal Framework**

To answer the question presented, the Court must examine the term "projected disposable income" as contained in § 1325(b) of the Bankruptcy Code and interpreted by the Supreme Court's *Lanning* decision. Every "interpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.'" *Ransom v. FIA Card Services*, 562 U.S. 61, 131 S.Ct. 716, 723-24, 178 L.Ed.2d 603 (2011) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026 103 L.Ed.2d 290 (1989)). Section 1325(b)(1)(B) of the Bankruptcy Code states:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . . the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B) (emphasis added). Before Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA),

Pub. L. No. 109-8, 119 Stat. 23, "disposable income" was defined by § 1325(b)(2) as "income received by the debtor and which [was] not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ." 11 U.S.C. § 1325(b)(2) (2004).[3] "Projected disposable income," undefined by the Code, was determined by subtracting the debtor's reasonable monthly expenses as reported on Schedule J from the debtor's monthly income as reported on Schedule I. Determining which expenses were "reasonably necessary" compelled courts "to make significant value judgments, leading to a wide diversity of rulings on whether particular circumstances were justifiable." *In re Slusher*, 359 B.R. 290, 294 (Bankr. D. Nev. 2007).

BAPCPA significantly altered § 1325(b). "Disposable income" is now defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2). The term "current monthly income" means the debtor's average monthly income received during the six months prior to the filing of the bankruptcy petition. *Id.* § 101(10A)(A)(i). Above-median debtors calculate their "amounts reasonably

---

[3] Prior to BAPCPA, § 1325(b)(1)(B) stated:
> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . . the plan provides that all of debtor's projected disposable income to be received in the three year period-beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1)(B) (2004).

5

necessary to be expended" pursuant to the means test contained in § 707(b)(2)(A) and (B). *Id.* § 1325(b)(3). Section 707(b)(2)(A)(ii)(I) states:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service [(IRS)] for the area in which the debtor resides . . . .

*Id.* § 707(b)(2)(A)(ii)(I).[4] "Projected disposable income" remains undefined.

The means test is embodied in Official Form B22C. Form B22C was prescribed by the Judicial Conference of the United States to assist Chapter 13 debtors calculate their disposable income.[5] The form contains an income component and an expense component. In the income component, the debtor is required to calculate current monthly income. In the expense component, the debtor is permitted to deduct expenses based on the IRS Standards and categories referenced in § 707(b)(2)(A)(ii)(I). Part V of the form instructs the debtor to subtract the total amount of expenses and allowed deductions (as indicated on line 58) from current monthly income (as indicated on line 53). The result is identified on line 59 as "Monthly Disposable Income Under § 1325(b)(2)."

The means test "supplants the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations." *Ransom,* 131 S.Ct. at 722. But, while the

---

[4] The IRS Standards are tables prepared by the IRS that list six categories of standardized expense amounts for basic necessities. *Ransom,* 131 S.Ct. at 722 & n.2.
[5] Debtors are required to use Official Form B22C. *See* FED. R. BANKR. P. 1007(b)(6).

6

means test's mechanical nature limits judicial discretion, courts immediately post-BAPCPA disagreed as to the meaning of "projected disposable income," still undefined by the Code. *See* 8 COLLIER ON BANKRUPTCY ¶ 1325.11[4][a] (16th ed. 2014). Courts utilized one of two approaches in determining projected disposable income: the "mechanical approach" and the "forward-looking approach." Courts employing the mechanical approach merely multiplied the debtor's monthly disposable income by the number of months in the debtor's plan. *See, e.g., In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D. N.C. 2006). Under this approach, "projected disposable income" and "disposable income" held the same meaning. Courts employing the forward-looking approach maintained that there was a presumption that the B22C amount was the debtor's projected disposable income; however, the debtor was able to rebut the presumption by showing that there was a substantial change in circumstances that rendered the debtor's disposable income in excess of her actual income. *See, e.g., In re Jass*, 340 B.R. 411, 418 (Bankr. D. Utah 2006).

The Supreme Court resolved the mechanical-forward-looking debate in *Hamilton v. Lanning*, 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). Due to a one-time buyout from her former employer that significantly inflated her gross income in the six months prior to filing her bankruptcy petition, the debtor in *Lanning*'s monthly disposable income under the means test was grossly in excess of her actual monthly income. *Id.* at 511. When the debtor proposed to dedicate to her unsecured creditors an amount less than her

disposable income, the trustee objected. On appeal from the Tenth Circuit Court of Appeals, the Supreme Court adopted the forward-looking approach to calculating projected disposable income. Specifically, the Court held that, "in unusual cases," after performing the B22C calculation, "court[s] may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 519, 524.

**B. Analysis**

The debtor's principal argument is based on her interpretation of the *Lanning* decision. According to her, *Lanning* stands for the proposition that courts must consider the debtor's actual expenses instead of Form B22C in determining projected disposable income if, as in this case, the debtor's actual expenses exceed her allowed deductions. The debtor urges that, under *Lanning*, the existence of a disparity between Schedule J and Form B22C removes the Chapter 13 debtor's case from the ambit of the means test and imposes on this Court a duty to consider additional facts before confirming the debtor's plan.

The debtor's argument is based on a misreading of the *Lanning* decision. It is true that *Lanning*'s adoption of the forward-looking approach was based, in part, on the Supreme Court's belief that the mechanical approach clashes with the terms of § 1325. 560 U.S. at 517-18. Section 1325(b) specifies that the debtor's projected disposable income will be "received in the applicable commitment period," measured "as of the effective date of the plan," and "will be applied to make payments . . . ." 11 U.S.C. § 1325(b)(1)(B). *Lanning*,

however, did not concern that debtor whose disposable income is merely greater than her actual income; rather, the decision concerned the inequities that result "in *unusual* cases" when, due to "significant *changes* in a debtor's financial circumstances [that] are known or virtually certain," Form B22C does not represent the debtor's post-confirmation income or expenses. 560 U.S. at 513, 519 (emphasis added).[6]

Due to this concern, the Supreme Court adopted the forward-looking approach to calculating disposable income, instructing courts:

> [A] court taking the forward-looking approach should begin by calculating disposable income and in most cases, nothing more is required. It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses.

*Id.* at 519 (footnote omitted). The debtor has acknowledged that no change in her financial situation has occurred. Therefore, her case is not one of the "unusual" cases of which *Lanning* is concerned.

The debtor contends, however, that the Supreme Court's decision in *Ransom v. FIA Card Services*, 562 U.S. 61, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011), supports her interpretation of *Lanning*. In *Ransom*, the Supreme Court was tasked with answering whether a debtor who makes no loan or lease payments on his vehicle may claim the IRS vehicle-ownership expenses

---

[6] Even the Supreme Court's conclusion that the mechanical approach does not comport with § 1325's text was based on its concern with changes in income or expenses. *See Lanning*, 560 U.S. at 520 (noting that "[i]n cases in which a debtor's disposable income during the 6-month look-back period is either substantially lower or higher than the debtor's disposable income during the plan period, the mechanical approach would produce senseless results.").

deduction. The vehicle-ownership category encompasses the costs of an automobile loan or lease. As referenced above, debtors may only deduct "*applicable* monthly expense amounts" as issued by the IRS. 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). The Supreme Court held that the ownership expense was not "applicable" to the debtor because the debtor did not make loan or lease payments on his vehicle. *Ransom*, 131 S.Ct. at 724-25. Therefore, the debtor was unable to claim the deduction.

The debtor argues that the *Ransom* Court's decision stands for the proposition that the means test may be bypassed in favor of the consideration of financial realities not taken into account on Form B22C. The debtor's *Ransom* argument, however, is off the mark. The *Ransom* Court did not bypass the means test; the Court's decision was based on its interpretation of "applicable" as used in § 707(b)(2)(A), the statutory foundation, along with subparagraph (B), of Form B22C. The Supreme Court interpreted § 707(b)(2)(A)(ii)(I) to determine that the debtor did not qualify for the ownership deduction. Therefore, instead of rejecting Form B22C, the *Ransom* Court applied that form's requirements and so validated *Lanning*'s holding that the B22C calculation is the primary – and, in the usual case where there has been no significant change in finances, the only – means of calculating projected disposable income.

Were this Court to follow the debtor's approach, it would acknowledge that courts may "depart from the definition of disposable income set forth in §

1325(b)(2) in virtually every case," due to the unlikelihood that a debtor's actual income or expenses will match the means test calculation. *Baud v. Carrol*, 634 F.3d 327, 347 (6th Cir. 2011). This type of approach would condone the poor habits and inflated budgets that often drive debtors to file for bankruptcy. This Court, as recognized by the Trustee, has already held that *Lanning* and *Ransom* do not support broad propositions of the sort urged by the debtor. In *In re Scott*, 457 B.R. 740 (Bankr. S.D. Ill. 2011), the debtors claimed the IRS standardized vehicle-ownership expenses for two cars, even though their actual ownership expenses were less than the allowance. The Trustee objected to confirmation, claiming, just as the debtor herein, that *Lanning* imbues this Court with the authority to account for known differences between debtors' actual expenses and the allowed IRS deductions. This Court, however, disagreed, stating that "the *Lanning* decision affords latitude to the Court *only when there has been a change* in the debtor's financial situation. Where there is no change, *Lanning* has no bearing." *Id.* at 748 (emphasis added). *Accord In re Litt*, No. 11-62637, 2012 WL 392887, at *4 (Bankr. N.D. Ohio Feb. 6, 2012) ("The fact that the monthly net income figure on Schedule J is different from line 56 of the means test is, in and of itself, not a basis to use Schedule J to determine projected disposable income.").

In *Scott*, the Trustee also argued that, under *Ransom*, the IRS Standards are not "applicable" when the debtor's actual expenses render his income below that of the B22C amount. This Court, however, rejected such an interpretation

11

of *Ransom,* opining that "it seems ridiculous that the [Supreme] Court even undertook to decide what is 'applicable' if [§ 707(b)(2)(A)(ii)(I)] is not . . . relevant" to the projected disposable income analysis. *Scott,* 457 B.R. at 746. The Court has been presented with no new insights into *Lanning* or *Ransom* sufficient to persuade it to depart from its decision in *Scott.*

The debtor's last argument is that failure to consider the debtor's actual expenses undermines the bankruptcy policy of providing the bankrupt debtor a "fresh start." While the fresh start principal is an important bankruptcy policy, *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), Congress intended to advance other objectives through the BAPCPA amendments. One such objective was the elimination of judicial discretion in determining disposable income. In *In re Nance,* 371 B.R. 358 (Bankr. S.D. Ill. 2007), this Court stated:

> It is clear from the Chapter 7 means test, the adoption of standardized expense calculations for above-median debtors, and the calculation methods for determining "projected disposable income" that a major goal of Congress was to replace judicial discretion with specific statutory standards and formulas.

*Id.* at 366. *See also Musselman v. eCast Settlement Corp.,* 394 B.R. 801, 812 (E.D. N.C. 2008) ("Congress, in its amendments to § 1325(b) . . . sought to impose objective standards on Chapter 13 determinations, thereby removing a degree of judicial flexibility in bankruptcy proceedings"); *In re Morgan,* 374 B.R. 353, 362 (Bankr. S.D. Fla. 2007) ("[U]se of the [IRS] Standards as a fixed allowance recognizes BAPCPA's goal of removing or minimizing judicial

discretion when applying the means test; allowing for a quick and formulaic analysis of the Debtor's disposable monthly income"); *In re Briscoe*, 374 B.R. 1, 20 (Bankr. D. D.C. 2007) ("The means test now incorporated into the "projected disposable income" requirement accomplishes Congress' goal of removing discretion from the judiciary, thereby preventing wayward judges from abusing their discretion by crediting debtors for unreasonable expenses"). Using the means test to calculate disposable income in usual cases, such as the debtor's, furthers this goal by reducing judicial involvement.

The Court agrees with the debtor that Congress's insistence on a standardized approach to calculating disposable income may produce anomalous results. "In eliminating the pre-BAPCPA case-by-case adjudication of above-median-income debtors' expenses . . . Congress chose to tolerate the occasional peculiarity that a brighter-line test produces." *Ransom*, 131 S.Ct. at 729. Using actual expenses when they are less than the IRS Standards may produce more disposable income for the benefit of unsecured creditors and obligate debtors to repayment plans that may better reflect their financial situations; however, "this is not the framework we have been given." *Scott*, 457 at 747. While guided by the fresh start and other bankruptcy policies, the Court may only advance these policies "*within the framework prescribed by Congress and Form B22C.*" *Id. Lanning* and *Ransom* promote Congress's directive by placing primary importance on the utilization of Form B22C in determining projected disposable income.

## **Conclusion**

The debtor's expenses and income have been consistent both pre- and post-bankruptcy. There is nothing "unusual" about a debtor whose expenses exceed their income. Absent any such unusual circumstances, courts may not confirm an above-median debtor's plan that deviates from Form B22C simply because the debtor's actual expenses exceed her allowed deductions. For the reasons set forth above, the Trustee's objection to confirmation of the debtor's Chapter 13 plan is sustained.

SEE ORDER ENTERED THIS DATE.

ENTERED: December 29, 2014

/s/ Laura K. Grandy
_____
UNITED STATES BANKRUPTCY JUDGE-7